1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JOSIE L. RAY, *et al.*, | Case No. 14-cv-1020-BAS(WVG) |
| Plaintiffs, | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |
| v. | **[Doc. No. 11]** |
| NATIONSTAR MORTGAGE LLC d/b/a CHAMPION MORTGAGE, *et al.*, | |
| Defendants. | |

19        On March 25, 2014, Plaintiff Josie L. Ray, as Executor of the Estate of Melvin Ray, her deceased spouse, and in her individual capacity, commenced this action in the San Diego Superior Court against Defendants Nationstar Mortgage d/b/a Champion Mortgage, Bank of America, N.A., and 1st Source Funding, Inc., arising out of alleged wrongful conduct related to a Home Equity Conversion Mortgage ("HECM" or "reverse mortgage").  Nationstar later removed this action to this Court.  Mrs. Ray now moves to remand to state court.  Nationstar and Bank of America oppose.

26        The Court finds this motion suitable for determination on the papers submitted and without oral argument.  See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **GRANTS** Mrs. Ray's motion to remand.

# I.      BACKGROUND

Mrs. Ray, who is 77 years old, is the surviving spouse of the decedent, Mr. Ray, who passed away on March 6, 2013. (Compl. ¶ 1.) Mrs. Ray is also the executor of Mr. Ray's estate. (*Id.* ¶ 2.) The estate includes real property located in San Diego, California, which "is now, and has been the residence of [Mrs. Ray] since approximately 1975." (*Id.* ¶¶ 3–4.) Title to the residence was in the names of Mr. and Mrs. Ray, as husband and wife, for over 30 years, "before the decedent obtained a Home Equity Conversion Mortgage 'Reverse Mortgage' in February of 2008," when Mr. Ray was 81 years old and Mrs. Ray was 71 years old. (*Id.* ¶ 4.) "The residence is now encumbered by a Reverse Mortgage which is in the decedent's name alone." (*Id.*)

On or about December 30, 2013, "[t]he holder of the Reverse Mortgage commenced foreclosure proceedings on the Reverse Mortgage . . . with the recording of a Notice of Default[.]" (Compl. ¶ 4.)

Mrs. Ray contends that "there was no compelling necessity for a Reverse Mortgage on the residence at all," especially given that "[t]here was no existing mortgage debt on the property." (Compl. ¶ 5.) However, in December 2007, Mrs. Ray alleges that she and her spouse "participated in Reverse Mortgage counseling," in which neither Mr. nor Mrs. Ray "understood, were fully informed, or informed at all, of the consequences to a surviving spouse who was not on title, and was not a borrower on a Reverse Mortgage." (*Id.*) Though title for the residence was originally held in both Mr. and Mrs. Ray's names, the Reverse Mortgage was in Mr. Ray's name alone, allegedly made "without full knowledge and/or consent" of Mrs. Ray. (*Id.* ¶ 22.) Mrs. Ray did not discover details of the Reverse Mortgage until after Mrs. Ray's death on March 6, 2013. (*Id.* ¶ 64.)

According to Mrs. Ray, the Reverse Mortgage was structured as a "lump sum" payout rather than as a payout in monthly installments, or as a line of credit to be available in the future. (Compl. ¶ 6.) Mrs. Ray contends that "Defendants . . . had a strong economic incentive to have [her] removed from title to the residence, and to

structure the Reverse Mortgage transaction with the decedent only, as the decedent was 10 years older than [Mrs. Ray], and the 'lump-sum' payout would be larger based upon his age, thus yielding larger commissions and fees to the Defendants." (*Id.*) She further contends that "Defendants . . . had a strong economic incentive to structure the Reverse Mortgage as a 'lump sum' payout, because it maximized their fees and commissions at both the loan origination stage, and at the 'back end' when the Reverse Mortgage was sold." (*Id.* ¶ 7.)

Mrs. Ray describes the structure of the Reverse Mortgage as an arrangement where "the unused but available line of credit would have gained compounded interest at the rate of approximately 5% or more annually," thereby depriving Mr. and Mrs. Ray of potential income and investment opportunities. (Compl. ¶ 8.) To Mrs. Ray, the proper structure of the Reverse Mortgage would have been a line of credit instead of a lump-sum payment with both Mr. and Mrs. Ray on the title of the residence and on the Reverse Mortgage. (*Id.*)

On March 25, 2014, Mrs. Ray commenced this action in the San Diego Superior Court, asserting six causes of action for: (1) reformation of contract; (2) declaratory relief; (3) injunctive relief; (4) elder financial abuse; (5) fraud, concealment, intentional misrepresentation; and (6) negligence, negligent misrepresentation. On April 22, 2014, Nationstar removed this action to this Court. In the notice of removal, Nationstar asserts that it is a Delaware corporation headquartered in Lewisville, Texas, and Bank of America is national banking association that is a citizen of North Carolina. (Notice of Removal 3:10–4:8.) Furthermore, in response to Mrs. Ray's allegation that 1st Source Funding is a California corporation, Nationstar states that 1st Source Funding "as of July 20, 2005 was a dissolved California corporation," while also contending that 1st Source Funding is "a 'sham defendant' included with the intention to preclude removal." (*Id.* at 4:9–21.) Nationstar recognizes that 1st Source Funding "may have been the broker that originated the loan." (*Id.*) Mrs. Ray now moves to remand this action. Nationstar opposes, and Bank of America joins in opposition (Doc. No. 21).

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution or statute, which is not to be expanded by judicial decree." *Id.* (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006).

Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Sygenta Crop Prot. v. Henson*, 537 U.S. 28, 32 (2002); *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1380 (9th Cir. 1988). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566; *see also Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *O'Halloran*, 856 F.2d at 1380. "The propriety of removal . . . depends on whether the case originally could have been filed in federal court." *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566. The court's removal jurisdiction must be analyzed on the basis of the pleadings at the time of removal. *See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers*, 159 F.3d 1209, 1213 (9th Cir. 1998).

## III.   DISCUSSION

Mrs. Ray argues, among other things, that the Court lacks subject-matter jurisdiction over this action because the presence of 1st Source Funding, a now defunct California corporation, as a defendant defeats the complete-diversity-of-citizenship requirement needed to establish diversity jurisdiction. (Pl.'s Mot. 9:19–11:11.)  In

response, Nationstar argues that 1st Source Funding is a sham defendant against whom Mrs. Ray has "absolutely no possibility" of establishing a cause of action.  (Def.'s Opp'n 2:2–8:2.)

In attempting to invoke this Court's diversity jurisdiction, the defendant must prove that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  "Subject matter jurisdiction based upon diversity of citizenship requires that no defendant have the same citizenship as any plaintiff." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (per curiam), *abrogated on other grounds by Hertz Corp v. Friend*, 130 S. Ct. 1181 (2010).  "The citizenship of an LLC is the citizenship of its members." *Garcia v. Specialized Express, LLC*, No. ED CV 10-729, 2010 WL 2402889, at *1 (C.D. Cal. June 8, 2010).  "[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

A defendant's burden to establish fraudulent joinder is a "heavy" one. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009).  A defendant is fraudulently joined only "[i]f a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).  Merely showing that an action is likely to be dismissed against the alleged sham defendant does not demonstrate fraudulent joinder. *Diaz v. Allstate Ins. Grp.*, 185 F.R.D. 581, 586 (C.D. Cal. 1998).  "If there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Hunter*, 582 F.3d at 1044.  Moreover, a defendant must prove fraudulent joinder "by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).  "[A]ll doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleadings

must be resolved in favor of remand." *Archuleta v. Am. Airlines, Inc.*, No. CV 00-1286, 2000 WL 656808, at *4 (C.D. Cal. May 12, 2000).

In arguing that 1st Source Funding is a sham defendant, Nationstar contends that Mrs. Ray has no possible cause of action for each of her claims. Specifically, Nationstar contends, among other things, that Mrs. Ray's causes of action for elder financial abuse, fraud, and negligence / negligent misrepresentation are all barred by their respective statutes of limitations. (Def.'s Opp'n 4:20–8:2.) Mrs. Ray disputes Nationstar's contention on the basis that the "discovery rule" delayed the accrual of some of her causes of action. (Pl.'s Reply 4:11–6:25.) Consequently, if Mrs. Ray has any possible cause of action against 1st Source Funding, then complete diversity of citizenship is broken and this action must be remanded. *See Hunter*, 582 F.3d at 1044.

Generally, a cause of action accrues at "the time when the cause of action is complete with all of its elements." *Norgat v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999). An exception to this general rule is the "discovery rule," which "postpones the accrual of a cause of action until the plaintiff discovers, or has reason to discover the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). The doctrine "focuses primarily on the plaintiff's excusable ignorance of the limitations period." *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1988). "[It] is not available to avoid the consequences of one's own negligence." *Id.*

California Welfare and Institutions Code § 15657.7 provides that "[a]n action for damages . . . financial abuse of an elder or dependent adult . . . shall be commenced within four years after the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered, the facts constituting the financial abuse." According to Nationstar, Mrs. Ray should have discovered any wrongful conduct on February 2, 2008, the date when the deed of trust for the Reverse Mortgage was executed, and thus "would have been required to file [her] lawsuit against 1st Source Funding on or before February 2, 2012[.]" (Def.'s Opp'n 4:17–5:6.) Normally, had Mrs. Ray signed the loan documents, she would have been charged with the knowledge

- 6 -

14cv1020

of any wrongdoing at the time of execution and the discovery rule would not have been applicable. *See Giordano v. Wachovia Mortg., FSB*, No. 10-cv-04661, 2011 WL 1130523, at *3 (N.D. Cal. Mar. 25, 2011) (dismissing elder-abuse claim as untimely; allegations that lender misrepresented and failed to disclose material terms of mortgage were insufficient to trigger discovery rule where the mortgage terms were disclosed in loan documents that plaintiffs signed). But Mrs. Ray alleges that she was "neither on title to the residence at the time the HECM was obtained, nor was she a signatory to the HECM." (Compl. ¶ 26.)

In *Johannson v. Wachovia Mortgage FSB*, No. C 11-02822, 2011 WL 3443952, at *3-4 (N.D. Cal. Aug. 5, 2011), the district court concluded that the plaintiff sufficiently alleged facts "to create a plausible inference, but not to determine conclusively, that the statute of limitations has run on [her fraud-based, intentional-infliction-of-emotional-distress, and elder-financial-abuse] claims, or alternatively whether the discovery rule tolled the limitations periods." The court based its conclusion on the plaintiff's allegations that "she did not read the loan agreement until December 2007," but also that "she had it or another document in her possession that would have revealed the alleged fraud before that time." *Johannson*, 2011 WL 3443952, at *4. Based on that reasoning, the district court denied dismissing the aforementioned claims on statute-of-limitations grounds, allowing the parties to revisit the issue after discovery. *Id.*

The alleged circumstances surrounding Mrs. Ray and the Reverse Mortgage provide a stronger factual basis for a plausible elder-financial-abuse claim than in *Johannson*. In addition to the allegation that Mrs. Ray was not a signatory to the Reverse Mortgage, she also alleges that she did not discover the terms of the Reverse Mortgage until after Mr. Ray's death on March 6, 2013, when Nationstar accelerated the loan and began demanding full payment. (*See* Pl.'s Reply 6:22–25.) Furthermore, other than the date when the deed of trust was executed, Nationstar fails to direct the Court's attention to any factual allegation in the complaint that could suggest that Mrs.

Ray discovered or had reason to discover the alleged wrongful conduct before March 6, 2013.  At best, Nationstar shows that the elder-financial-abuse claim is likely to be dismissed, but that is inadequate to demonstrate fraudulent joinder.  *See Diaz*, 185 F.R.D. at 586.  Construing all doubts concerning the possibility of a cause of action against 1st Source Funding in favor of remand, the Court concludes that Mrs. Ray presents adequate factual allegations to plausibly apply the discovery rule, and that she sufficiently states a possible cause of action for elder financial abuse against 1st Source Funding.  *See Archuleta*, 2000 WL 656808, at *4; *see also Johannson*, 2011 WL 3443952, at *3-4.

Because Mrs. Ray states a possible state-law cause of action against 1st Source Funding, a citizen of California, and Nationstar fails to demonstrate by clear and convincing evidence that 1st Source Funding is a sham defendant, the complete-diversity-of-citizenship requirement is not fulfilled for this action.  *See* 28 U.S.C. § 1332; *Hunter*, 582 F.3d at 1044; *Hamilton Materials*, 494 F.3d at 1206.  Therefore, the Court lacks subject-matter jurisdiction, and remand is necessary.  *See Hunter*, 582 F.3d at 1044.

## IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Mrs. Ray's motion to remand. (Doc. No. 11.)  The Clerk of the Court is directed to remand this action to the San Diego Superior Court.

**IT IS SO ORDERED.**

**DATED: June 6, 2014**

**Hon. Cynthia Bashant**
**United States District Judge**